**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at ASHLAND**

**CIVIL ACTION NO. 24-38-DLB**

**JACOB ASTER FRALEY**                                                              **PLAINTIFF**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) to challenge a final decision of the Defendant denying his application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be **affirmed**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed his current application for disability insurance benefits and supplemental security income benefits in 2018, alleging disability due to chronic depression, bipolar disorder, anxiety, pseudo bulbar affect, post-traumatic stress disorder and traumatic brain injury (Tr. 262). After initial and reconsideration denials (Tr. 62-91), and hearing (Tr. 35-61), an ALJ denied Plaintiff's claims in May 2021 (Tr. 12-34). In December 2022, the United States District Court for the District of South Carolina remanded the case to the Commissioner for further proceedings (Tr. 951-71). A second hearing was conducted by Administrative Law Judge Cynthia Weaver ("ALJ"), wherein

1

Plaintiff, accompanied by counsel, testified.  At the hearing, Robert Brabham, a vocational expert ("VE"), also testified.

At the hearing, pursuant to 20 C.F.R. §416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1:   If the claimant is performing substantial gainful work, he is not disabled.

Step 2:   If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. §416.920(b).

Step 3:   If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 872-885). Plaintiff was 42 years old at the time of the hearing decision.  He has a GED and has worked as a pharmacy technician and security guard (Tr. 263).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff meets the insured status requirements through December 31, 2002 and has not engaged in substantial gainful activity since April 20, 2017 (Tr. 874).

The ALJ then determined, at Step 2, that Plaintiff suffers from degenerative disc disease, history of fractured leg and arm, asthma, post-traumatic stress disorder, anxiety,

2

depression and mild cognitive disorder, which he found to be severe within the meaning of the Regulations (Tr. 874-875).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 875-876). In doing so, the ALJ specifically considered Listings 1.15, 1.16, 1.17, 303, 12.02, 12.03, 12.04, 12.06 and 12.15. *Id.*

The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 883-884) but determined that he has the residual functional capacity ("RFC") to perform light and sedentary work with the following exceptions:

> Can perform frequent postural maneuvers; he can have no climbing of ropes, ladders, or scaffolds; he should avoid concentrated pulmonary irritants; he can have frequent fingering and handling with the right upper extremity with no limitation for the left upper extremity; he should avoid dangerous moving unguarded machinery, unprotected heights, or commercial driving. He must be afforded option to sit and stand during the workday, 1-2 min at a time while remaining on task. He can understand, remember, follow, and perform simple routine instructions and tasks. Work should not require a specific production rate such as assembly line work or work that requires hourly quotas. He is limited to jobs involving occasional and well explained workplace changes. He is limited to occasional interaction with coworkers and the general public. He can concentrate and remain on task for 2 hours at a time, sufficient to complete an 8- hour workday.

(Tr. 876).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 884).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

3

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II.    STANDARD OF REVIEW

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983). A reviewing court "may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, a reviewing court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th

Cir.1997).

With regard to the analytical framework, the claimant bears the ultimate burden of producing sufficient evidence to prove that he or she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### III.   ANALYSIS

Plaintiff contends that the ALJ's finding of no disability is erroneous because she erred in her consideration of psychiatrist Michael Kaplan, M.D.'s opinion.

The ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how he or she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). The ALJ focuses on the persuasiveness of the medical opinion(s) using the following five factors: (1) Supportability (2) Consistency (3) Relationship with the claimant (which includes) (i) Length of the treatment relationship (ii) Frequency of examinations (iii) Purpose of the treatment relationship (iv) Extent of the treatment relationship (v) Examining relationship (4) Specialization (5) Other factors. 20 C.F.R. § 404.1520c(a)-(c) (2017).

At a minimum, the ALJ must explain how he or she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulation, the more

consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

Dr. Kaplan completed two mental medical source statements in which he opined that Plaintiff is extremely limited in his ability to function in a workplace (Tr. 804-806 and 1360). In his first statement, he opined that Plaintiff could rarely relate to co-workers, deal with the public, interact with supervisors, deal with work stressors, maintain attention/concentration, and frequently understand, remember, and carry out simple job instructions. (Tr. 804-805). Subsequently, Dr. Kaplan opined that Plaintiff's symptoms had improved since he could now occasionally relate to coworkers, deal with the public, and interact with supervisors. (Tr.1360). However, his ability to deal with work stressors, maintain attention/concentration, understand, remember, and carry out simple instructions remained unchanged. *Id.*

The ALJ found Dr. Kaplan's opinions to be only "somewhat persuasive". (Tr. 882). Discussing Dr. Kaplan's assessments in detail, she noted that his own treatment records did not support his opinion of extreme limitation. For example, his first patient note reflects that although Plaintiff appeared sad and depressed, he was fully alert and cooperative, had adequate hygiene and grooming, showed no evidence of psychomotor retardation or agitation, had normal speech, could understand the information and questions given to

him, had coherent and logical thought process, and normal thought content (Tr. 793). He noted that Plaintiff had poor short-term memory, but his long-term and immediate memory were intact, he had fair calculation ability, had good insight and fair to good judgment, and had intact ability to abstract proverbs (Tr. 793). He found mild neurocognitive disorder due to TBI, PTSD, psychotic disorder due to TBI, and major depression (Tr. 799). However, he noted that Plaintiff's cognitive deficits did not interfere with independence in everyday activities (Tr. 800). Notably, subsequent treatment records lack objective findings and only refer to Plaintiff's subjective complaints, which, actually show improvement with less paranoia, fewer visual hallucinations, no depression, low anxiety, and good sleep (Tr. 1231). Put simply, Dr. Kaplan's opinions are not supported by his treatment records.

The ALJ further found that Dr. Kaplan's opinions were not consistent with the record. For example, two consultative examiners opined that Plaintiff as much less limited in comprehension, mood and attention. Moreover, the ALJ did not completely discount Dr. Kaplan's opinion when it was consistent with other, credible evidence in the record. For example, she provided for Plaintiff's memory and cognition issues in the RFC as well as his emotional issues.

The Court notes that Dr. Kaplan's second statement was a check-the box opinion. The Sixth Circuit has held that such an opinion without explanation is "patently deficient." *Hernandez v. Commissioner of Social Security,* 644 Fed. Appx. 468, 475 (6th Cir. 2016, citation omitted). Indeed, such a form may be inherently deficient even when the ALJ does not "expressly cite the unsupported checkbox form as a basis" for rejecting

7

the opinion. *Gallagher v. Berryhill*, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017, citing *Hernandez*) (Ruiz MJ) *adopted by Gallagher v. Berryhill*, 2017 WL 2791106, at *1 (N.D. Ohio June 27, 2017) (Oliver, Jr., J.). Here, the ALJ specifically noted that Dr. Kaplan's check-the-box form lacked explanation as to how the answers were derived or what information was relied upon. She further commented that this statement required speculation on Dr. Kaplan's part.

The Court finds that ALJ properly assessed Dr. Kaplan's opinions. Her conclusion that his opinions lacked consistency and supportability is supported by substantial evidence.

Plaintiff has presented no other challenge objecting to the ALJ's decision. Although not required due to the lack of additional objections, the Court has reviewed the underlying ALJ decision, finds it is supported by substantial evidence, and finds no basis to reverse or remand the Commissioner's final decision.

## IV.   CONCLUSION

Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. #12) be **DENIED** and the Defendant's Motion for Summary Judgment (Doc. #15) be **GRANTED**.

A Judgment in favor of the Defendant will be entered contemporaneously herewith.

This 19th day of March 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\SocialSecurity\MOOs\Ashland\24-38 Fraley MOO.docx

9